UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MEGAN LEA HARMON, | Case No. 20-13132 |
|         Plaintiff, | Robert H. Cleland |
| v. | United States District Judge |
| ANDREW SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
|         Defendant.<br>_____/ | |

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 16)</u>**

Plaintiff Megan Harmon ("Harmon") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 16), Plaintiff's reply (ECF No. 17) and the administrative record (ECF No. 12).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's

motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner's decision.

I.     **DISCUSSION**

    A.     **Background and Administrative History**

Plaintiff alleges her disability began on April 21, 2017, at the age of 37. (ECF No. 12, PageID.52). She applied for DIB benefits on March 5, 2019. (*Id.*). In her disability report, she listed two ailments which diminished her ability to work. (*Id.*). The ailments included: (1) left ankle injury 4/17; (2) and Complex Regional Pain Syndrome ("CRPS") throughout entire body. (*Id.* at PageID.214). Her application was denied on May 14, 2019. (*Id.* at PageID.119).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at PageID.52). On January 14, 2020, ALJ Virginia Herring held a hearing, at which Plaintiff and a vocational expert ("VE"), James M. Fuller, testified. (*Id.*). On March 4, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.49).

Plaintiff later submitted a request for review of the hearing decision. (*Id.* at PageID.43). On September 30, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.*). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 25, 2020.

**B.     Plaintiff's Medical History**

On April 21, 2017, Plaintiff twisted her ankle as she was leaving a banquet hall. On May 3, 2017, Plaintiff visited Peter M. Boruta, M.D. at the Center for Advanced Orthopedics and reported pain and a history of foot and ankle trouble. Since 2016, she stopped running 5-10 miles per day because of chronic pain. (*Id.* at PageID.296). Upon examination, Dr. Boruta found that she walked with a mildly antalgic gait, had discomfort walking on her tiptoes, and could not perform a good heel rise on her right. Plaintiff was diagnosed with a right ankle sprain, instability of both ankles, bilateral contracted Achilles tendons, and bilateral acquired cavus feet. She was given a walking boot. (*Id.* at PageID.296-97).

Two weeks later Plaintiff reported improvement. She walked with an improved gait, subtle cavus feet, and her tiptoe and single heel rise walking also improved. She had mild pain at the cuboid tunnel, tenderness in the ATF and CF ligaments, and tight tendons, but showed good flexion, inversion, and eversion. Plaintiff planned to wean off the walking boot and was prescribed physical therapy and orthotics. (*Id.* at PageID.299). On May 23, 2017, Plaintiff started physical therapy and reported she started walking about 16,000 steps per day again, though she experienced pain after her walks. (*Id.* at PageID.516). Through June 5, 2017, Plaintiff returned to physical therapy four more times for exercise and massage

treatments. Plaintiff reported improvement in mobility but was still limited in walking. (*Id*. at PageID.596-605).

On June 8, 2017, she reported to Dr. Boruta that the pain in her right rankle persisted and was worse on the left. She was referred for an MRI and told to continue physical therapy and use a night splint for the right side. (*Id.* at PageID.302). Plaintiff continued physical therapy through June 22, 2017. (*Id.* at PageID.606-15). She reported improvement in walking, and she could tolerate walking about three miles every few days with some pain and swelling. Plaintiff could not carry heavy groceries. (*Id.* at PageID.512-13). On June 29, Plaintiff was discharged from physical therapy because she planned to get surgery on her ankle. (*Id.* at PageID.618).[1]

At her follow up in July, Dr. Boruta noted Plaintiff had been doing her exercises regularly and used her orthotics, though her ankles tended to give out without shoes. The MRI revealed increased signal in her bone marrow and possible lesion. There was edema in the peroneal tendons, ATF ligament, evidence of severe sprain or partial tear, and thickening of the ligaments. Without more

---

[1] Only Plaintiff's impairments through her date last insured ("DLI"), June 30, 2017, were under review. The DLI is the last date of eligibility for DIB based on insured status; after an individual's insured status expires, an individual is no longer eligible for DIB. *See* 20 C.F.R. § 404.101(a).

improvement, surgery was recommended. (*Id*. at PageID.304-05). She was recommended for surgery on August 3, 2017. (*Id*. at PageID.432).

On September 1, 2017, Plaintiff underwent surgery to repair her ATF ligament. (*Id.* at PageID.432, 449-50). After surgery, Plaintiff reported right ankle pain, sensitivity, skin discoloration, and swelling. (*Id.* at PageID.820). In November 2017, Plaintiff was diagnosed with CRPS. (*Id*. at PageID.59). Pain medications and spinal cord stimulators helped manage the pain. (*Id.* at PageID.820). Throughout 2018, Plaintiff continued to report worsening pain from CRPS through the right leg, back, chest, hands, and jaw. (*Id*. at PageID.884). The spinal cord stimulator provided some relief. (*Id.* at PageID.884-87).

On May 2, 2019, state agency consultant David Mika, D.O., found that through Plaintiff's DLI, June 30, 2017, Plaintiff could perform sedentary work, except that she needed to avoid concentrated exposure to hazards and could occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. (*Id.* at PageID.111-13).

    **C.**    **The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 21, 2017, the alleged onset date, through her DLI, June 30, 2017. (ECF No. 12, PageID.55). At **Step 2**, the ALJ found that

5

Plaintiff had the following severe impairments: pes cavus deformity of the right foot with small osteochondral lesions in the posterior talar dome and history of talofibular ligament tear status post reconstruction, chronic pain syndrome, and obesity. (*Id.*). At **Step 3**, the ALJ found that through the DLI Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> to perform sedentary work…except that the claimants can occasionally push and pull, occasionally balance, stoop, or climb stairs and ramps. She may never climb ladders, ropes, or scaffolds and she may never kneel, crouch, or crawl and she must avoid dangerous machinery and unprotected heights.

(*Id.*). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.60). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as inspector, assembler, and a sorter. (*Id.* at PageID.62). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from April 21, 2017, the alleged onset date through the

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

DLI, June 30, 2017. (*Id.*).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that despite the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Sec'y of Health & Hum. Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### E. Standard of Review

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F. Analysis**

Plaintiff makes two arguments in favor of remand, contending first that the ALJ failed to accurately describe Plaintiff's limitations in crafting the RFC. (ECF No. 14, PageID.1431). Second, she argues the ALJ erred by improperly discounting her subjective complaints.[4] (*Id.* at PageID.1435).

1. The RFC

Plaintiff argues the ALJ did not include all her limitations in crafting the RFC, particularly the waxing and waning of Plaintiff's symptoms. The RFC was

---

[4] Though Plaintiff's brief has only one argument section, her arguments about her subjective complaints can be organized into a separate section.

9

inconsistent, as the ALJ found Plaintiff capable of both sedentary work and unskilled light exertion work, which casts doubt on the ALJ's reliance on VE testimony. (*Id.* at PageID.1431-37). In response, the Commissioner contends the ALJ reasonably limited Plaintiff's RFC to a reduced range of sedentary work based on substantial evidence in the record. (ECF No. 16, PageID.1456). The ALJ committed harmless error when referencing "unskilled, light exertion work," in her decision. This was a typographical error, as the ALJ limited Plaintiff to sedentary work with no mental limitations in the RFC, and the hypotheticals posed to the VE were limited to sedentary work. (*Id*. at PageID.1458). The RFC was supported by substantial evidence. In reply, Plaintiff reiterates that the ALJ's inconsistent RFC and deficient consideration of Plaintiff's limitations is cause for remand. (ECF No. 17, PageID.1478).

Plaintiff's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard*, 276 F.3d at 239. Hypothetical questions posed to a VE to determine whether there are other jobs a claimant can perform despite impairments should include an "accurate [ ] portray[al] [of her] individual physical and mental impairment[s]." *Howard*, 276 F.3d at 239 (quoting *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). If the RFC accurately reflects the claimant's abilities and the ALJ relies on the RFC to

make her decision, that decision is supported by substantial evidence. *Howard*, 276 F.3d at 239.

Here, the ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary work. (ECF No. 12, PageID.55). The Commissioner admits the ALJ made typographical error in the body of her decision by also noting Plaintiff had the RFC to perform "unskilled, light exertion" work. (*Id.* at PageID.60). But the ALJ's error is harmless because it did not prejudice Plaintiff. *Rabbers*, 582 F.3d at 651 (allowing reversal where "'error prejudices a claimant on the merits or deprives the claimant of a substantial right.'") (citations omitted). The ALJ included both sedentary and unskilled limitations in her hypotheticals to the VE. The VE also provided jobs sedentary and unskilled claimants could perform including, inspector, assembler, and sorter. (ECF No. 12, PageID.62, 97-98). Since the VE considered both limiting restrictions, the ALJ's error did not prejudice Plaintiff. *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 679 (6th Cir. 2013) ("Where…description of the residual functional capacity given by the administrative law judge to the vocational expert included all the relevant limitations, we rely on that description and not the characterization in the written description."). The ALJ's error was harmless.

Further, the RFC accurately reflected Plaintiff's abilities and was supported by substantial evidence, even if she did not enumerate all of Plaintiff's

11

impairments. *Howard*, 276 F.3d at 239. Here, the ALJ considered Plaintiff's alleged symptoms and how consistent they were with the record evidence. (ECF No. 12, PageID.56). She also considered Plaintiff's extensive medical history, including Plaintiff's right ankle sprain, bilateral ankle instability, bilateral contracted Achilles tendon, and cavus feet. (*Id.* at PageID.57). She also noted use of conservative treatment methods before the DLI (*Id.* at PageID.59) and the waxing and waning of Plaintiff's symptoms (*Id.* at PageID.60). Plaintiff's increasing activities and improvement during treatment also informed the RFC. (*Id.* at PageID.59-60). Though, the ALJ also noted her bouts with swelling and tightness despite these improvements. (*Id.*). The ALJ also considered medical opinions and even found more restrictions than that of Dr. David Mika, who overlooked "the waxing and waning nature of claimant's symptoms," and severe issues with Plaintiff's right ankle. (*Id.* at PageID.60). The ALJ found Plaintiff had a more limited range of motion than what Dr. Mika opined. (*Id.*). She even considered evidence and testimony about Plaintiff's impairments after the DLI. (*Id.* at PageID.59). The RFC is supported by substantial evidence, as the ALJ relied on Plaintiff's medical history, treatment, and testimony to craft it. An ALJ can draw from the record as a whole in crafting the RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) ("the ALJ was not required to

discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole.").

The RFC is supported by substantial evidence in the record. Plaintiff's treatment history is a limited three-month period, from April 21, 2017, until June 30, 2017, the DLI. A review of Plaintiff's impairments during this limited period charts use of some conservative treatment, including physical therapy, at home workouts, and a walking boot, which Plaintiff sought to wean herself off. (ECF No. 12, PageID.302). Visits with her physical therapist and doctor show some improvements in walking and exercise and increasing activities of daily living. (*Id*. at PageID.299; 574-77;596-605;612). Though Plaintiff refutes the RFC with more limiting evidence, including evidence outside the period of review, this cannot disrupt the RFC if it is supported by substantial evidence, like it is here. Even if substantial evidence supports Plaintiff's contention, reviewing the record again to arrive at a contrary conclusion would be reweighing the evidence, and the court will not reweigh the evidence considered by the ALJ. *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013) ("'[w]e do not reweigh the evidence or substitute our judgment for that of the ALJ.'") (citations omitted). A remand on this basis is improper.

13

2. Evaluation of Plaintiff's Allegations of Disability

Plaintiff contends that the ALJ erred by discounting Plaintiff's subjective complaints, as she failed to properly evaluate the factors listed in SSR 16-3p. (ECF No. 14, PageID.1435). Specially, the ALJ disregarded Plaintiff's daily activities, the location, frequency, duration, and intensity of her symptoms, particularly during her CRPS flares. (*Id*. at PageID.1435-36). The Commissioner maintains that the ALJ properly evaluated Plaintiff's subjective complaints by considering the SSR 16-3p factors. The ALJ's finding that Plaintiff's subjective complaints conflicted with the record was supported by substantial evidence. (ECF No. 16, PageID.1466-68). Plaintiff reiterates her arguments in reply. (ECF No. 17).

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. 2017 WL 5180304, at *3 (Oct. 25, 2017). First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* The ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. (ECF No.12, PageID.56).

Second, the ALJ must evaluate the intensity and persistence of alleged symptoms and determine whether the alleged symptoms limit the claimant's ability to work. SSR 16-3p at *3-4. When reviewing alleged symptoms, the ALJ must

14

consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4; 20 C.F.R. §§ 404.1529(c)(3), 416.929.

The ALJ did evaluate Plaintiff's complaints according to the SSR 16-3p factors. She reviewed objective medical evidence (ECF No. 12, PageID.57-59), Plaintiff's testimony about her symptoms (*id*. at PageID.59), medical opinions and prior administrative findings (*id.* at PageID.60), and her activities of daily living (*id*. at PageID.58). Further, although the ALJ need not consider impairments after the DLI, the ALJ did discuss Plaintiff's CRPS flares and their effect on Plaintiff. (*Id.* at PageID.59).[5]

Even still, the ALJ found that Plaintiff's claims of limitation conflicted with medical evidence and other evidence in the record. (*Id*. at PageID.56). When reviewing an ALJ's credibility determination of a claimant's subjective complaints, a court may affirm the ALJ's decision if it is supported by substantial evidence. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

---

[5] Plaintiff also asserts that the ALJ failed to carefully consider the effects of Plaintiff's CRPS flares pursuant SSR 03-2p. (ECF No. 14, PageID.1438). Yet as noted above, Plaintiff was not diagnosed with CRPS until November 2017, months after the DLI on June 30, 2017. (ECF No. 12, PageID.59). Even still, the ALJ discussed Plaintiff's CRPS, the effects of the pain it caused Plaintiff and how she treated it. (*Id.*).

(quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)) (citations omitted). For example, an ALJ who selectively cites medical evidence to cast the claimant in a more capable than accurate light may commit reversible error. *Howard*, 276 F.3d at 240-41 (finding reversible error when ALJ relied on selective reading of exhibits in record to form RFC). The ALJ must give specific reasons for their decision that are supported by evidence in the record and make clear what weight he gave the claimant's complaints and why he gave it that weight. *Rogers*, 486 F.3d at 249.

The ALJ gave specific reasons for her credibility determination that are supported by evidence in the record. The ALJ explains she found Plaintiff's testimony not entirely consistent with the rest of the record for "reasons explained in this decision." (ECF No.12, PageID.56). First, she explained that her review of the record was limited to April 21, 2017, until the DLI on June 30, 2017. Evidence within the scope of review did not support Plaintiff's allegations and showed conservative treatment, progress with therapy, and continued ability to perform activities of daily living. (*Id.* at PageID.59). Plaintiff's increasing physical activities conflicted with Plaintiff's complaints, notably that nearly all of Plaintiff's physical therapy goals had been partially met. (*Id.* at PageID.58-59).

The ALJ's detailed analysis cited objective and subjective evidence, unlike the ALJ in *Rogers*, where focus on the absence objective findings,

16

mischaracterization of daily functions, and reliance on a conservative treatment recommendation was inappropriate and cause for remand. *Rogers*, 486 F.3d at 248. Here, the ALJ's analysis was "'sufficiently specific to make clear … the weight the adjudicator gave … and the reasons for that weight.'" *Id.* at 248 (internal citations omitted). The ALJ detailed how the inconsistencies between Plaintiff's subjective complaints and the limited record eligible for review undermine Plaintiff's credibility.

      The ALJ's credibility determination is supported by substantial evidence in record. Medical evidence within the scope of review included treatment records from April 21, 2017, until June 30, 2017. During the review period, treatment notes chart some conservative treatment, including a few weeks of a walking boot, physical therapy, and orthotics. (ECF No. 12, PageID.299). Dr. Boruta continued to recommend physical therapy, a home exercise program, and a night splint to stretch out the Achilles. Plaintiff also treated herself with inserts, orthotics, and ankle wraps. (*Id.* at PageID.302). Conservative treatment like this is substantial evidence the ALJ can rely on to reject subjective complaints. *See Pretzer v. Comm'r of Soc. Sec.*, 2015 WL 1245873, at *11 (E.D. Mich. Mar. 18, 2015) (overall conservative treatment and normal activities of daily living are substantial evidence for credibility determination). Though Plaintiff highlights her surgery after the DLI, this surgery was not recommended until August 3, 2017, after the

17

DLI. (ECF No. 12, PageID.432). Moreover, "simply demonstrating that a condition may have worsened since the DLI does not establish that the Plaintiff was disabled from performing basic work prior to the DLI." *Chassar v. Comm'r of Soc. Sec.*, 2019 WL 1236451, at *6 (E.D. Mich. Mar. 18, 2019) (citing *King v. Sec. of Health and Hum. Servs.*, 896 F.2d 204, 206 (6th Cir. 1990)).

To reject Plaintiff's subjective complaints, the ALJ also relied on evidence of improvements during the period of review. After a few weeks with Dr. Boruta, Plaintiff reported improvement with walking and planned to wean off a walking boot. (*Id*. at PageID.299). In physical therapy, Plaintiff reported improvement in mobility. (*Id*. at PageID.605-12). By June 22, 2017, her physical therapist noted that Plaintiff partially met almost all her long-term goals, including increasing walking time, carrying objects for shopping and housework, and 16,000 steps daily with decreased pain. (*Id.* at PageID.612). This improvement is coupled with increasing activities of daily living, including walking for longer periods of time, riding a bike, walking three miles a day every few days, and performing chores. (*Id*.).

The ALJ rightfully relied on Plaintiff's subjective complaints, objective medical evidence, and other evidence in the record to form the RFC. SSR 16-3p at *3-4; 20 C.F.R. §§ 404.1529(c)(3), 416.929. To the extent that Plaintiff argues the ALJ "cherry picked" evidence to make her seem more capable, this argument has

18

little merit. The Sixth Circuit has frowned upon these types of "cherry-picking" arguments as calling for an impermissible re-weighing of evidence. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Because the administrative findings are well supported and explained, the deference generally accorded an ALJ's credibility determination is appropriate here. *Cruse*, 502 F.3d at 542 (ALJ's evaluation of the subjective claims entitled to deference). Thus, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and there is no cause for remand.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2022        s/Curtis Ivy, Jr.
                             Curtis Ivy, Jr.
                             United States Magistrate Judge